Filed 1/15/21

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br>v.<br><br> EDUARDO DELAVEGA,<br><br>    Defendant and Appellant. | A154936<br><br>(Contra Costa County<br>Super. Ct. No. 5-170874-2) |

Defendant Eduardo Delavega was charged with murder and various enhancements, including three firearm enhancements under Penal Code section 12022.53, subdivisions (b), (c), and (d).[1] The subdivision (d) enhancement applies when a defendant is found to have personally and intentionally discharged a firearm causing death, while the subdivision (b) enhancement applies when a defendant is found to have personally used a firearm and the subdivision (c) enhancement applies when a defendant is found to have intentionally discharged a firearm. The enhancements under subdivisions (b) and (c) are lesser included enhancements of the enhancement under subdivision (d), in that a defendant who violates subdivision (d) necessarily also violates subdivisions (b) and (c).

---

[1] All further statutory references are to the Penal Code. In this opinion, we sometimes refer to these three firearm enhancements under section 12022.53 by their respective subdivisions only.

1

Although Delavega was charged with all three enhancements, the verdict forms did not reference the subdivision (b) and (c) enhancements, and the jury made no finding as to either of them. The jury did, however, convict Delavega of second degree murder and find true the subdivision (d) enhancement. At sentencing, Delavega asked the trial court to exercise its discretion under Senate Bill No. 620 (2017–2018 Reg. Sess.) (Senate Bill No. 620) to strike the subdivision (d) enhancement, which carries a term of 25 years to life. The trial court declined to do so, and it sentenced Delavega to a total term of 40 years to life in prison.

On appeal, Delavega argues that the trial court erred because it refused to strike the subdivision (d) enhancement on the premise that it could only impose or strike that enhancement, not strike that enhancement and impose a lesser enhancement under subdivision (b) or (c).[2] The Courts of Appeal disagree about the circumstances under which a trial court has the discretion to impose a lesser enhancement when it strikes a greater enhancement under section 12022.53. The first published decision to address the issue held that courts have such discretion even when the lesser enhancement was not charged separately. (*People v. Morrison* (2019) 34 Cal.App.5th 217, 222 (*Morrison*).) Subsequent cases have disagreed, holding that courts have such discretion only when a lesser enhancement was charged and found to be true. (See, e.g., *People v. Tirado* (2019) 38 Cal.App.5th 637, 644 (*Tirado*), review granted Nov. 13, 2019, S257658.) We hold that when, as in this case, a lesser enhancement *was* separately

---

[2] Delavega also argues in both this appeal and a related petition for a writ of habeas corpus that his trial counsel was ineffective for telling the trial court that it did not have the option to impose a lesser enhancement under section 12022.53. We conclude that Delavega did not thereby forfeit his claim of error, and by separate order we accordingly deny the habeas petition. (*In re Eduardo Delavega*, A157982.)

2

charged under section 12022.53 but was not determined to be true, the trial court lacks discretion to impose it upon striking a greater enhancement under the statute.  Accordingly, we affirm.

I.
FACTUAL AND PROCEDURAL
BACKGROUND

A detailed discussion of the facts is unnecessary to our resolution of the appeal.  Briefly, however, Delavega got into a fist fight with Justin Kroh in August 2014.  Later that month, Delavega, who was then 18 years old, and a friend were driving in Antioch when they spotted Kroh riding a bicycle on the opposite side of the road.  Delavega, who testified in his own defense, heard Kroh ask if he was ready for another fight, and Delavega instructed his friend to make a U-turn.

Delavega's friend parked, and Delavega got out of the vehicle and approached Kroh.  After a brief confrontation during which Delavega claimed Kroh pulled a knife, Delavega shot at Kroh, striking him in the head. Delavega and his friend fled the scene, and Kroh later died of his injuries.

Delavega was charged with murder and various enhancements.  One alleged a gang special circumstance, and another alleged that Delavega committed the offense for the benefit of a street gang.[3]  In addition, under the heading "Enhancement 2 [¶] PC12022.53(d):  Special Allegation-Principal's Intentional Discharge of A firearm, GBI – Gang Case," Delavega was charged as follows:

> "It is further alleged as to defendant, EDUARDO DELAVEGA, that as to Count 1 that a principal personally and intentionally discharged a firearm, a handgun, which

[3] Murder was charged under section 187, subdivision (a), and the gang special circumstance was alleged under section 190.2, subdivision (a)(22). The other gang allegation was under section 186.22, subdivision (b)(1)(C).

3

proximately caused great bodily injury and death to Justin Kroh within the meaning of Penal Code section 12022.53(d) and (e)(1). It is further alleged that a principal personally and intentionally discharged a firearm, within the meaning of Penal Code section 12022.53(c) and (e)(1). It is further alleged that a principal personally used a firearm, within the meaning of Penal Code section[] 12022.53(b) and (e)."

The jury acquitted Delavega of first degree murder, rendering a finding on the gang special circumstance unnecessary (see § 190.2, subd. (a)), but it found him guilty of second degree murder. It also found the remaining separate gang allegation untrue, rendering unnecessary a finding under the heading "Charge Enhancement 2a" on the verdict form, which addressed the portion of the gun enhancement under section 12022.53, subdivision (e) (see §§ 186.22, subd. (b), 12022.53, subd. (e)(1)(A)).

The jury found true that Delavega "personally and intentionally discharged a firearm, . . . which proximately caused great bodily injury and death to Justin Kroh, a violation of Penal Code Section 12022.53(d)." The verdict form did not include separate spaces for findings under subdivision (b) or (c) of that statute or reference either subdivision, and there was no discussion on the record about how the section 12022.53 allegations should appear on the form. At the prosecution's request, the jury was instructed under CALCRIM No. 3150, which is given "when the defendant is charged with an enhancement both for intentional discharge *and* for intentional discharge causing great bodily injury or death"—i.e., when enhancements are charged under both subdivisions (c) and (d). (Judicial Council of Cal., Crim. Jury Instns. (2020 ed.) Bench Notes to CALCRIM No. 3150, p. 856.)[4]

---

[4] The jury was not instructed under CALCRIM No. 3146, the form instruction pertaining to personal use of a firearm under subdivision (b), CALCRIM No. 3148, the form instruction pertaining only to intentional

4

At the May 2018 sentencing hearing, Delavega asked the trial court to exercise its discretion under section 12022.53, subdivision (h) (section 12022.53(h)) to strike the enhancement of 25 years to life under subdivision (d) and impose a total term of 15 years to life for the murder. In addressing the request, the court agreed with Delavega's trial counsel that it had only "two choices, the 15 to life . . . or the 40 to life, and that's it. There's no in between. There's no splitting the difference. Those are the options that face the Court." Concluding that it was not "justifiable" to strike the enhancement, the court imposed a total term of 40 years to life.

## II.
### DISCUSSION

### A. *Legal Background*

As we have said, section 12022.53 establishes three sentencing enhancements of varying lengths for the personal use of a firearm during the commission of certain felonies. Specifically, subdivision (b) requires a 10-year enhancement for the personal use of a firearm during a qualifying offense, subdivision (c) requires a 20-year enhancement if the firearm is personally and intentionally discharged, and subdivision (d) requires a 25-years-to-life enhancement if the firearm is personally and intentionally discharged and proximately causes great bodily injury or death.

"[A] sentencing enhancement . . . is not a complete offense in itself" but instead "prescribes additional punishment for the crime." (*People v. Anderson* (2009) 47 Cal.4th 92, 115.) As a result, sentencing enhancements are not analogous to substantive offenses in many respects, including in the functioning of "greater and lesser included offenses and greater and lesser

---

discharge under subdivision (c), or CALCRIM No. 3149, the form instruction pertaining only to intentional discharge causing death under subdivision (d).

5

degrees of the same offense." (*Ibid.*; see, e.g., *People v. Majors* (1998) 18 Cal.4th 385, 410 [sua sponte duty to instruct on lesser included offenses does not extend to "so-called 'lesser included enhancements' "].) Nonetheless, we use the term "lesser enhancement" to refer to an enhancement whose factual predicates are necessarily found true when a factfinder finds true the greater enhancement. (See, e.g., *People v. Fialho* (2014) 229 Cal.App.4th 1389, 1398 (*Fialho*).) In this sense, subdivisions (b) and (c) of section 12022.53 are lesser enhancements of subdivision (d), meaning that a true finding under subdivision (d) amounts to a true finding under the other two subdivisions. (*Morrison*, *supra*, 34 Cal.App.5th at p. 222.)

For any of these enhancements to be imposed, the requisite facts must "be alleged in the accusatory pleading and either admitted by the defendant in open court or found to be true by the trier of fact." (§ 12022.53, subd. (j); *People v. Gonzalez* (2008) 43 Cal.4th 1118, 1124–1125.) In addition, an enhancement must "be pleaded in connection with every count as to which it is imposed." (*People v. Anderson* (2020) 9 Cal.5th 946, 956–957 (*Anderson*).) "If more than one enhancement per person is found true under [section 12022.53], the court shall impose upon that person the enhancement that provides the longest term of imprisonment." (§ 12022.53, subd. (f).) In such a situation, the proper course is to sentence the defendant on the greater enhancement and stay any lesser enhancements. (*Gonzalez*, at pp. 1122–1123.)

Senate Bill No. 620 took effect on January 1, 2018. (*People v. McDaniels* (2018) 22 Cal.App.5th 420, 424.) The legislation amended section 12022.53(h), which previously prohibited sentencing courts from striking a firearm enhancement found true under the statute. (Former § 12022.53(h); *McDaniels*, at p. 424.) Now, subdivision (h) provides that a

6

sentencing court "may, in the interest of justice pursuant to Section 1385 and at the time of sentencing, strike or dismiss an enhancement otherwise required to be imposed by this section." (§ 12022.53(h).)

It is undisputed that if all three enhancements are charged and separately found true, a trial court can strike the greater enhancement under subdivision (d), reducing the firearm-related term to 20 years under subdivision (c), or also strike the subdivision (c) enhancement, reducing the term to 10 years under subdivision (b). (See *People v. Wang* (2020) 46 Cal.App.5th 1055, 1090–1091; *Morrison*, *supra*, 34 Cal.App.5th at p. 222.) But if lesser enhancements are not charged and found true, Courts of Appeal are split as to whether a trial court may strike a greater enhancement under amended section 12022.53(h) and impose one of the lesser enhancements instead, and the issue is currently on review in the Supreme Court. (*People v. Valles* (2020) 49 Cal.App.5th 156, 166–167 (*Valles*), review granted July 22, 2020, S262757; *People v. Garcia* (2020) 46 Cal.App.5th 786, 788–789 (*Garcia*), review granted Jun. 10, 2020, S261772; *People v. Yanez* (2020) 44 Cal.App.5th 452, 459–460 (*Yanez*), review granted Apr. 22, 2020, S260819; *Tirado*, *supra*, 38 Cal.App.5th at p. 644; *Morrison*, *supra*, 34 Cal.App.5th at p. 222−223.) No published decision has analyzed the situation presented here, where the lesser enhancements *were* charged but the jury did not separately find them true because the verdict form did not include them.[5]

---

[5] In *Garcia*, all three enhancements were charged but the trial court "with the concurrence of the parties did not instruct on either of the lesser . . . enhancements." (*Garcia*, *supra*, 46 Cal.App.5th at p. 789.) Although *Garcia* thus presented similar circumstances to ours, the opinion did not address whether the fact the lesser enhancements were charged was a meaningful distinction. Rather, in repeatedly referring to a "prosecutor's charging authority" and "charging decision" not to pursue lesser enhancements, *Garcia* reads as if the lesser enhancements were *not* charged. (*Id.* at pp. 791–793.)

7

Delavega's claim that the trial court declined to strike the subdivision (d) enhancement under the mistaken belief that it lacked the authority to impose one of the lesser enhancements presents issues of statutory interpretation that we review de novo. (*John v. Superior Court* (2016) 63 Cal.4th 91, 95; *Tirado, supra,* 38 Cal.App.5th at p. 642.) " 'Our primary task in interpreting a statute is to determine the Legislature's intent, giving effect to the law's purpose. [Citation.] We consider first the words of [the] statute, as the most reliable indicator of legislative intent. [Citation.]' [Citation.] We construe the statute's words in context, and . . . [i]f we find the statutory language ambiguous or subject to more than one interpretation, we may look to extrinsic aids, including legislative history or purpose to inform our views." (*John,* at pp. 95–96.)

B.      *We Will Consider Delavega's Claim on the Merits.*

As a preliminary matter, the Attorney General argues Delavega forfeited his claim about the trial court's application of section 12022.53(h) because no objection was made below. Generally, "[a] party in a criminal case may not, on appeal, raise 'claims involving the trial court's failure to properly make or articulate its discretionary sentencing choices' if the party did not object to the sentence at trial." (*People v. Gonzalez* (2003) 31 Cal.4th 745, 751.) In *Yanez,* Division Two of the Fourth District Court of Appeal indicated that defendants, like Delavega, who do not "request to modify or reduce" an enhancement under subdivision (d) in the trial court forfeit their appellate claim that the court erred by not imposing a lesser enhancement. (*Yanez, supra,* 44 Cal.App.5th at p. 460.)

*Yanez*'s treatment of the forfeiture issue was dicta, however, and we conclude that under the circumstances in this case Delavega did not forfeit his appellate claim by failing to ask the trial court to impose a lesser

8

enhancement under section 12022.53.[6] An exception to the forfeiture rule exists " ' " 'where to require defense counsel to raise an objection "would place an unreasonable burden on defendants to anticipate unforeseen changes in the law and encourage fruitless objections in other situations where defendants might hope that an established rule . . . would be changed on appeal." ' " ' [Citation.] 'In determining whether the significance of a change in the law excuses counsel's failure to object at trial, we consider the "state of the law as it would have appeared to competent and knowledgeable counsel at the time of the trial." ' " (*People v. Perez* (2020) 9 Cal.5th 1, 8.)

At the time of Delavega's sentencing, Senate Bill No. 620 had been in effect for a few months, but the contours of a trial court's authority under amended section 12022.53(h) were unsettled. *Morrison*, the first case to address the possibility of imposing a lesser enhancement that was not separately found true, was not decided until April 2019, nearly a year after Delavega was sentenced. And it is hardly obvious from subdivision (h)'s text that the authority to "strike or dismiss an enhancement otherwise required to be imposed" might include the ability to strike a greater enhancement and impose a lesser one that was not presented to the jury. Thus, we would not expect knowledgeable and competent counsel to anticipate *Morrison*'s holding. Indeed, Delavega's trial counsel, the prosecutor, and the trial court all thought the only options were either to impose the subdivision (d) enhancement or to strike it altogether. We therefore conclude that trial counsel's failure to object below is excused.

---

[6] Delavega asserts that his trial counsel's statement about sentencing options under section 12022.53 was not invited error, and the Attorney General does not argue otherwise. We agree the statement was not invited error. (See *People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 49 [invited error occurs only if it is " 'clear that counsel acted for tactical reasons and not out of ignorance or mistake' "].)

Moreover, even if Delavega had forfeited the claim, we would exercise our discretion to decide it. "It is well settled that an appellate court may decide an otherwise forfeited claim where the trial court has made an error affecting 'an important issue of constitutional law or a substantial right.' " (*Anderson*, *supra*, 9 Cal.5th at p. 963.) Delavega's claim presents "an important issue of law" whose resolution has significant consequences for the length of many defendants' sentences, including his. (*In re S.B.* (2004) 32 Cal.4th 1287, 1293–1294.) Thus, we will consider his claim on the merits.

C.     *Trial Courts Lack Discretion to Impose Lesser Enhancements Under Section 12022.53 Unless They Are Separately Found True by the Jury.*

We begin with an overview of the relevant case law interpreting amended section 12022.53(h). In an early case discussing trial courts' discretion under the amended statute, *Morrison*, Division Five of this court held that even if the subdivision (b) and (c) enhancements were not alleged and submitted to the jury, a trial court "[m]ay . . . impose one of those lesser enhancements in lieu of the greater enhancement under [subdivision (d)] if the court finds it is in the interests of justice to do so." (*Morrison*, *supra*, 34 Cal.App.5th at pp. 222–223.) *Morrison* reviewed case law establishing that a court "may impose a 'lesser included' enhancement that was not charged in the information when a greater enhancement found true by the trier of fact is either legally inapplicable"—such as where it does not apply to the crime of which the defendant was convicted—"or unsupported by sufficient evidence." (*Id.* at p. 222.) The decision then concluded that there was "no reason a court could not also impose one of these [lesser] enhancements after striking an enhancement under [subdivision (d)], under section 1385." (*Id.* at pp. 222–223.)

10

*Tirado* disagreed with *Morrison*, concluding that section 12022.53(h) does not "authorize[] a trial court to substitute one enhancement for another." (*Tirado*, *supra*, 38 Cal.App.5th at pp. 643–644.) *Tirado* provided two bases for its decision. First, it determined that "the plain language of sections 1385 and 12022.53[(h)]" reveals that a "court's power pursuant to these sections is binary: The court can choose to dismiss a charge or enhancement in the interest of justice, or it can choose to take no action. There is nothing in either statute that conveys the power to change, modify, or substitute a charge or enhancement." (*Id.* at p. 643.) Although recognizing that the case law *Morrison* discussed authorizes a court to "impose a ' " 'lesser included enhancement[]' " ' following trial 'when the charged enhancement is either factually unsupported or inapplicable to the offense of conviction,' " *Tirado* concluded this principle is inapplicable where "the enhancement at issue . . . [is] neither unsupported by the law nor unsupported by the evidence." (*Tirado*, at p. 644.)

Second, *Tirado* determined that its "conclusion [was] consistent with the well settled principle that 'prosecuting authorities, exercising executive functions, ordinarily have the sole discretion to determine . . . what charges to bring,' " which " 'is founded, among others, on the principle of separation of powers.' " (*Tirado*, *supra*, 38 Cal.App.5th at p. 644.) *Tirado* explained, "[T]he prosecution could have alleged all three section 12022.53 enhancements, and if it had done so, the jury would presumably have found all three true. In that circumstance, the [trial] court would have had the discretion to strike the [subdivision (d)] enhancement and then either impose one of the other two enhancements or strike them as well. However, because the People exercised their charging discretion to allege only one enhancement, the trial court was limited to either imposing or striking that enhancement." (*Ibid.*)

11

To date, Division Two of the Second District and two panels in Division Two of the Fourth District have agreed with the Fifth District in *Tirado* that section 12022.53(h) "does not grant a trial court the discretion to substitute lesser included enhancements, at least where the greater enhancement is legally and factually valid." (*Garcia*, *supra*, 46 Cal.App.5th at pp. 790–791; *Valles*, *supra*, 49 Cal.App.5th at pp. 165–167; *Yanez*, *supra*, 44 Cal.App.5th at pp. 458–459.) *Garcia* and *Yanez* also agreed with *Tirado*'s separation of powers point, and *Garcia* provided a third basis for its holding: "the rules governing when to instruct the jury on lesser offenses and enhancements." (*Garcia*, at pp. 791–792; *Yanez*, at pp. 459–460.)

We agree with the *Tirado* line of cases that the plain language of section 12022.53(h) authorizes a sentencing court only to "strike or dismiss an enhancement," not substitute a lesser enhancement for one found true. Delavega does not argue otherwise. Instead, he argues that case law establishes a court's broad authority "to impose what [it] might deem to be an appropriate sentence." We therefore turn to consider whether courts are independently empowered to substitute a lesser enhancement that was not separately found true for a greater one that was found true. (See *Valles*, *supra*, 49 Cal.App.5th at p. 171 [conc. opn. of Menetrez, J.].) We conclude they are not.

In claiming that trial courts are so empowered, Delavega relies primarily on *People v. Marsh* (1984) 36 Cal.3d 134 (*Marsh*), which *Morrison* characterized as "further buttress[ing]" its holding. (*Morrison*, *supra*, 34 Cal.App.5th at p. 223.) The *Marsh* defendant was convicted of numerous crimes committed when he was 16 years old, including kidnapping for ransom with bodily harm under section 209, which then as now carries a sentence of life imprisonment without the possibility of parole. (*Marsh*, at

12

pp. 137–138; § 209, subd. (a).)  The Supreme Court held that section 1385 authorized the sentencing court "to strike the ransom and bodily harm allegations to reduce the required sentence for the kidnap[p]ing charge to allow [California Youth Authority] eligibility." (*Marsh*, at pp. 137, 143.)  In doing so, the Court noted that on remand the lower court would have "a broad range of sentencing options between [the two] extremes" of either striking both allegations or striking neither, since it could choose to strike one but not the other, which it turn might have ramifications for the defendant's sentence on his other convictions.  (*Id.* at p. 144.)

Delavega asserts that "under *Marsh*, since the sentencing court has the power to strike conduct allegations when imposing a sentence for a substantive offense, it has the power to strike similar allegations in a[] sentencing enhancement."  Thus, he appears to suggest that a court could strike the element of "proximately caus[ing] great bodily injury" from a subdivision (d) enhancement to reduce it to a subdivision (c) enhancement.[7] We agree with *Garcia*, however, that "*Marsh* simply recognized that the trial court had the discretion under section 1385 to strike both of the kidnapping sentencing enhancements at play in that case, to strike only one of them, or to strike neither," and that *Marsh* "says nothing about whether the court also has the power to substitute lesser included enhancements for a valid greater enhancement." (*Garcia*, *supra*, 46 Cal.App.5th at pp. 793–794.)  Although it is true that the kidnapping enhancements at issue in *Marsh* were alleged under the same statute as the kidnapping charge itself (see § 209, subd. (a)),

---

[7] Since a person can "use" a firearm without "discharging" it, we do not see how any allegation could be "stricken" from the enhancement for "personally and intentionally discharg[ing] a firearm" under subdivision (c) to reduce it to an enhancement for "personally us[ing] a firearm" under subdivision (b).

13

*Marsh* concluded they could be stricken in the same manner as other enhancements "stated separately from the substantive charge" because "[i]t would be anomalous if this variation called for a different result since all that is missing is the placement of the enhancing allegations in a separate paragraph rather than in the one which describes the basic kidnap[p]ing offense." (*Marsh*, *supra*, 36 Cal.3d at p. 143.) Thus, *Marsh* does not provide authority for the proposition that a court can strike portions of a single enhancement to reduce it to a lesser enhancement.

Having concluded that *Marsh* does not aid Delavega, we next turn to the case law discussing courts' power to impose a lesser enhancement in other contexts. In *People v. Strickland* (1974) 11 Cal.3d 946 (*Strickland*), the Supreme Court determined that an enhancement under former section 12022.5 for use of a firearm was improperly applied to the defendant because he was not convicted of one of the six felonies that the statute then covered. (*Strickland*, at p. 959.) The Court held that the defendant was nevertheless "subject to additional punishment under [former] section 12022" for being armed with a deadly weapon, even though an enhancement under that statute was not charged, because " 'the jury did find that he used and thus was armed with a firearm' " in returning a finding under former section 12022.5. (*Strickland*, at p. 961.) And since the defendant was charged under section 12022.5, he " 'had notice that his conduct [could] also be in violation of [former] section 12022.' " (*Strickland*, at p. 961.)

Similarly, Courts of Appeal have permitted the imposition of a lesser uncharged enhancement when substantial evidence did not support the greater enhancement but did support the lesser enhancement. In *People v. Allen* (1985) 165 Cal.App.3d 616 (*Allen*), the Second District Court of Appeal held that where a finding of personal firearm use under former

14

section 12022.5 had to be reversed for insufficient evidence, an uncharged enhancement for a principal being armed under former section 12022 could be imposed because "[e]very gun use within the meaning of [the first provision] necessarily include[d] a violation of [the second provision]." (*Allen*, at pp. 626–627.) Drawing an analogy to a reviewing court's power to reduce a conviction to a lesser included offense if insufficient evidence supports the greater (see § 1260), *Allen* perceived "no reason why the same rationale should not apply to" lesser enhancements. (*Allen*, at p. 627.) Other cases have applied similar reasoning in affirming the imposition of a lesser uncharged enhancement based on a trial court's determination that the evidence did not support the greater enhancement. (*People v. Dixon* (2007) 153 Cal.App.4th 985, 1001–1002; *People v. Lucas* (1997) 55 Cal.App.4th 721, 742–743.)

More recently, in *Fialho*, the Sixth District Court of Appeal held that where the defendant was convicted of voluntary manslaughter and attempted voluntary manslaughter, the trial court properly struck enhancements found true under subdivision (d) of section 12022.53 and substituted enhancements for personal use of a firearm under section 12022.5, subdivision (a). (*Fialho*, *supra*, 229 Cal.App.4th at pp. 1392, 1398–1399.) In so holding, *Fialho* rejected the defendant's claim that "*Strickland* was, in effect, legislatively overruled by the enactment of the current version of section 1170.1, subdivision (e)" (*id.* at p. 1397), which then as now provides that "[a]ll enhancements shall be alleged in the accusatory pleading and either admitted by the defendant in open court or found to be true by the trier of fact."[8] (§ 1170.1, subd. (e).) Rather, *Fialho* concluded that under *Strickland*,

_____

[8] Section 12022.53, subdivision (j), "restates [section 1170.1, subdivision (e)'s] same basic point" specifically for firearm enhancements. (*Anderson*, *supra*, 9 Cal.5th at p. 953.) Subdivision (j) of the version of

15

"imposition of the uncharged enhancement is permitted" when "the charged enhancement is either factually unsupported or inapplicable to the offense of conviction," since the charged enhancement provides notice to defendants " 'that [their] conduct [could] also be in violation of' an uncharged enhancement that 'would be applicable in any case' in which the charged enhancement applies." (*Fialho*, at p. 1397, quoting *Strickland*, *supra*, 11 Cal.3d at p. 961.)

After surveying *Strickland* and other decisions approving the imposition of an uncharged lesser enhancement if the charged greater enhancement "was unsupported by substantial evidence or was defective or legally inapplicable in some other respect," *Morrison* perceived "no reason a court could not also impose . . . [an enhancement under subdivision (b) or (c) of section 12022.53] after striking an enhancement under [subdivision (d)] under section 1385." (*Morrison*, *supra*, 34 Cal.App.5th at p. 222–223.) Justice Menetrez agreed in his concurring opinion in *Valles*, stating, "I am aware of no reason why the judicial power to impose an uncharged lesser included enhancement would exist in the one context but not in the other. If a sentencing court has a long-established power to impose an uncharged lesser included enhancement after striking a greater enhancement that is legally inapplicable, why would that power disappear when the greater enhancement is stricken in the interest of justice under amended section 12022.53?" (*Valles*, *supra*, 49 Cal.App.5th at p. 171 [conc. opn. of Menetrez, J.].)

In our view, there *is* a reason why the power to impose an uncharged lesser enhancement exists when a greater enhancement is contrary to the

---

section 12022.53 at issue in *Fialho* is identical to subdivision (j) of the current statute, but *Fialho* did not address the provision.

law or evidence but not in other contexts.  The reason is that a court's power to modify a verdict or judgment emanates from legislation, not from any inherent authority.  Two statutes—sections 1181 and 1260—confer on courts the power to modify a greater enhancement to an uncharged lesser enhancement when the greater enhancement is not supported by law or evidence, but no statute confers a similar power when the greater enhancement is supported by the law and evidence but is stricken in the interest of justice.

For the most part, *Tirado* and the decisions following it did not attempt to explain why the power to impose an uncharged lesser enhancement is limited to cases where a greater enhancement is legally or factually invalid. *Tirado* merely indicated that "the [subdivision (d)] enhancement at issue [there] was neither unsupported by the law nor unsupported by the evidence," distinguishing it from the enhancements at issue in *Strickland* and its progeny.  (*Tirado*, *supra*, 38 Cal.App.5th at p. 644.)  *Valles* and *Yanez* provided little additional analysis.  (See *Valles*, *supra*, 49 Cal.App.5th at pp. 165–166 [*Morrison*'s holding "does not logically flow from a body of authority holding that a lesser enhancement may be imposed where there is a legal impediment to the imposition of a greater enhancement"]; *Yanez*, *supra*, 44 Cal.App.5th at p. 460 ["no suggestion that the jury's verdict was unsupported by the law or the evidence as would justify the imposition of a lesser offense"].)

Only *Garcia* addressed the issue in some detail.  While the Court of Appeal recognized the "line of authority—tracing all the way back to [*Strickland*]—acknowledging the power of a trial court to 'substitut[e] . . . a charged enhancement with an uncharged " 'lesser included enhancement,' " ' " it determined that "this power is limited to situations where the greater

17

enhancement is [legally or factually] defective. That is because this inherent power of courts serves a very specific purpose—that is, to enable courts to salvage as much of the prosecutor's charging decision and the jury's verdict as possible by allowing them to substitute a lesser included enhancement also found by the jury rather than to impose no enhancement at all. (E.g., *People v. Crooks* (1997) 55 Cal.App.4th 797, 811 [noting courts' [']inherent authority to correct an unauthorized sentence[']]; *People v. Relkin* (2016) 6 Cal.App.5th 1188, 1198 [same].)" (*Garcia, supra*, 46 Cal.App.5th at p. 793.)

*Garcia* did not explain its statement that courts have an "inherent" power to reduce a charged enhancement to a lesser enhancement. The two opinions *Garcia* cited to support the proposition, *Crooks* and *Relkin* (*Garcia, supra*, 46 Cal.App.5th at p. 793), recognize a reviewing court's authority to correct an "unauthorized sentence" (*People v. Relkin, supra*, 6 Cal.App.5th at p. 1198; *People v. Crooks, supra*, 55 Cal.App.4th at p. 811)—that is, a sentence that " 'could not lawfully be imposed under any circumstance in the particular case.' " (*People v. Smith* (2001) 24 Cal.4th 849, 852.) That power allows a court to strike a legally invalid offense or enhancement, which is different from the power to then impose an uncharged lesser offense or enhancement in place of the greater. And as for *Strickland* and subsequent decisions recognizing the power to impose an uncharged lesser enhancement, they say little about the source of that power and nothing about the justification for it.[9]

---

[9] To explain its conclusion that the defendant was "subject to additional punishment under [former] section 12022" even though the greater enhancement under former section 12022.5 "was improperly implied to [him]," *Strickland* merely quoted a statement it found "apropos" from an earlier decision, *People v. Provencher* (1973) 33 Cal.App.3d 546. (*Strickland, supra*, 11 Cal.3d at p. 961.) In the statement *Strickland* quoted, *Provencher* explained that even though an enhancement under former section 12022 was

18

*Allen* hinted at the idea that courts' power to impose an uncharged lesser enhancement is statutory, not "inherent," by likening that power to a reviewing court's power under section 1260 to reduce a conviction to a lesser offense when the greater offense is legally or factually unsupported. (*Allen, supra,* 165 Cal.App.3d at p. 627; see § 1260.) In fact, both section 1260 and section 1181, the statute specifying the circumstances in which a new trial may be ordered, *expressly* convey the power to modify a verdict or judgment to impose a lesser "punishment," not just a lesser included offense. (§§ 1181, subds. (6) & (7), 1260.) *Garcia* cited these statutes in explaining that section 12022.53(h)'s plain language does not include the power to modify an enhancement (*Garcia, supra,* 46 Cal.App.5th at p. 791), but the decision did not relate them to the power recognized in the *Strickland* line of cases. (*Garcia,* at p. 793.) The case law discussing sections 1181 and 1260 reveals, however, that the statutory power and the power discussed in *Strickland* are one and the same.

Under section 1181, subdivision (7), a court may grant a new trial "[w]hen the verdict or finding is contrary to law or evidence, but in any case

---

not technically a " 'lesser included offense' " of former section 12022.5 because both sections establish punishment, " 'section 12022 would be applicable in any case in which [section] 12022.5 applies. Basically [section] 12022.5 is a limited application of section 12022 with a heavier penalty. In the present case appellant did not come within the provisions of section 12022.5, as the crime of which he was convicted was not specified in that section, but the jury did find that he used and thus was armed with a firearm, a shotgun, at the time the offense was committed. Appellant was charged in the commission with the use of a firearm under section 12022.5, thus had notice that his conduct [could] also be in violation of section 12022.' " (*Strickland,* at p. 961, quoting *Provencher,* at pp. 549–550.) *Provencher* did not cite any authority for its determination that it could therefore modify the judgment to impose the lesser uncharged enhancement instead of the greater. (*Provencher,* at pp. 548, 551.)

wherein authority is vested by statute in the trial court or jury to recommend or determine as a part of its verdict or finding the punishment to be imposed, the court may modify such verdict or finding by imposing the lesser punishment without granting or ordering a new trial, and this power shall extend to any court to which the case may be appealed." Similarly, under subdivision (6) of the statute, a court may grant a new trial "when the verdict or finding is contrary to law or evidence, but if the evidence shows the defendant to be not guilty of the degree of the crime of which he [or she] was convicted, but guilty of a lesser degree thereof, or of a lesser crime included therein, the court may modify the verdict, finding or judgment accordingly without granting or ordering a new trial, and this power shall extend to any court to which the cause may be appealed." And finally, under section 1260, an appellate court "may reverse, affirm, or modify a judgment or order appealed from, or reduce the degree of the offense or attempted offense or the punishment imposed." In short, if a greater offense or enhancement is factually or legally unsupported, appellate and trial courts have the option to reduce it to a lesser offense or enhancement instead of ordering a new trial.

As our state Supreme Court has explained, the power to modify a verdict or judgment is "purely statutory" and did not always exist. (*People v. Navarro* (2007) 40 Cal.4th 668, 678–679 (*Navarro*); *People v. Lagunas* (1994) 8 Cal.4th 1030, 1038.) Subdivision (6) was added to section 1181 in 1927, in response to a decision in which the Supreme Court concluded that it did not have the power to modify a verdict of first degree arson to second degree arson upon holding that insufficient evidence supported the greater crime. (*Navarro*, at p. 676.) In 1949, a special commission recommended a further amendment to section 1181 by which courts would be given new " 'authority to change or modify the punishment in those cases in which the fixing of the

20

punishment is part of the verdict.' " (*People v. Odle* (1951) 37 Cal.2d 52, 56.) The commission also proposed an accompanying "amendment to section 1260 providing that [an] appellate court might reduce the degree of the offense or the punishment imposed." (*Id.* at p. 57.) The amendment to section 1181 did not pass, but the amendment to section 1260 did, adding the language permitting a reviewing court to " 'reduce the degree of the offense or attempted offense or the punishment imposed.' " (*Navarro*, at p. 677, italics omitted; § 1260.) And within a few years, the failed amendment was incorporated into section 1181 as subdivision (7). (Stats. 1951, ch. 1674, § 117.)

Although section 1260 does not by its terms limit the circumstances in which a reviewing court may reduce the offense or punishment, and therefore " 'seems to confer plenary power of modification on a reviewing court[,] it was not so intended.' " (*People v. Romo* (1967) 256 Cal.App.2d 589, 596.) Rather, the 1949 amendment of section 1260 was intended to " 'bring [the statute] into accord with section 1181(6) with respect to reduction of the degree of an offense and make clear that the court may reduce punishment in lieu of ordering a new trial, when there is *error* relating to the punishment imposed.' " (*Navarro*, *supra*, 40 Cal.4th at p. 678, quoting *People v. Odle*, *supra*, 37 Cal.2d at p. 58, italics added; see *Romo*, at p. 596.) In other words, because section 1181 explicitly limits a court's power to reduce a conviction or punishment to instances when the verdict is contrary to law or evidence, section 1260 has been interpreted to implicitly limit a court's power to reduce a conviction or punishment to instances when the judgment is legally or factually unsupported. (*Navarro*, at pp. 678–679; see, e.g., *People v. Eid* (2014) 59 Cal.4th 650, 659 [neither section 1181, subdivision (6), nor section 1260 gives courts "a general license to modify verdicts in accordance

21

with the evidence"]; *People v. Hines* (1997) 15 Cal.4th 997, 1080 [section 1260 does not empower Supreme Court "to overturn a judgment of death simply because [it] disagree[s] with the jury's penalty determination"].)

Given the development of sections 1181 and 1260 and the case law discussing them, we are left agreeing with the *Tirado* line of cases that a trial court does not have authority, under section 12022.53(h) or otherwise, to strike a greater firearm enhancement that is legally and factually sound and impose a lesser one that was neither charged nor found by the jury. Rather, a trial court's general power to reduce an enhancement is statutorily limited to instances when the enhancement "is contrary to law or evidence" under section 1181, subdivision (7), and section 12022.53(h) does not expand that power. Thus, if a trial court strikes an otherwise legally and factually supported enhancement "in the interest of justice pursuant to Section 1385" (§ 12022.53(h)), it lacks the power to impose a lesser enhancement that was not charged or found by the jury.[10]

Having so concluded based on the plain text of sections 12022.53(h) and 1181, we need spend little time discussing the two other justifications for this conclusion offered by the *Tirado* line of cases. The separation-of-powers point does not apply here, because the prosecution *did* allege the lesser enhancements. (Cf. *Tirado, supra,* 38 Cal.App.5th at p. 644; but see *Garcia, supra,* 46 Cal.App.5th at pp. 791–792 [relying on separation of powers to justify holding where lesser enhancements were charged but not submitted to jury by parties' mutual assent].) Our record is silent as to why the lesser

---

[10] The power to dismiss under section 1385 "is quite broad," and it may also be exercised when a charge is legally insufficient. (*People v. Hatch* (2000) 22 Cal.4th 260, 268, 273.) Thus, if a trial court dismissed a firearm enhancement under section 12022.53(h) for this reason, section 1181 would presumably authorize the court to impose an uncharged lesser enhancement instead.

enhancements were not included on the verdict forms, and we cannot conclude that their omission represents an exercise of prosecutorial discretion.

Similarly, *Garcia*'s discussion of "the rules governing when to instruct the jury on lesser offenses and enhancements" has no application here. (*Garcia*, *supra*, 46 Cal.App.5th at p. 792.) *Garcia* reasoned that if there is not substantial evidence from which a "rational jury could find that [the] defendant engaged in conduct warranting the lesser included enhancements . . . but not the greater enhancement," a trial court must deny a request to instruct on the lesser enhancements. (*Ibid.*) Thus, the decision concluded that interpreting section 12022.53(h) "to allow a court to substitute a lesser included firearm enhancement would empower a court to do on the back end what a court is prohibited from allowing a jury to do on the front end." (*Garcia*, at pp. 792–793.) Here, it is likewise true that no rational jury could have found that Delgado personally used or intentionally discharged the gun but that his use of the gun did not cause death. But we are aware of no authority suggesting that in such circumstances a trial court is *barred* from instructing on the lesser enhancements if they were actually charged. To the contrary, juries routinely return separate findings on lesser enhancements under section 12022.53 even when it is clear that defendants are liable under subdivision (d) if they are liable at all.

Finally, because the enhancements under subdivisions (b) and (c) were absent from the verdict form, we are unable to conclude that the jury effectively found them true such that the trial court could impose one of them if it struck the subdivision (d) enhancement.[11] In certain contexts, reviewing

---

[11] We requested and received supplemental briefing from the parties on this issue.

23

courts have recognized that "the form of the verdict is to be regarded as immaterial, provided the intention to convict of the crime charged be unmistakably expressed." (*People v. Tilley* (1901) 135 Cal. 61, 62; *People v. Webster* (1991) 54 Cal.3d 411, 447.) Rather, "[a] verdict is to be given a reasonable intendment and be construed in light of the issues submitted to the jury and the instructions of the court." (*People v. Radil* (1977) 76 Cal.App.3d 702, 710; accord *People v. Chevalier* (1997) 60 Cal.App.4th 507, 514; *People v. Jones* (1997) 58 Cal.App.4th 693, 710; *People v. Mackabee* (1989) 214 Cal.App.3d 1250, 1256.)

In isolation, these statements could be read to suggest that the jury here *did* make a separate finding under at least subdivision (c) of section 12022.53. Even though subdivision (c) was not specified on the verdict form, the jury found the subdivision (d) allegation true after being instructed under CALCRIM No. 3150 pertaining to both subdivisions (c) and (d). We agree with the Attorney General, however, that the decisions cited above establish that "courts may excuse missing findings in an appropriate harmless error context," and that verdict forms need not be overly detailed, *not* that "the finding of a greater crime or enhancement is . . . generally the equivalent of a freestanding lesser finding." (See, e.g., *People v. Webster*, *supra*, 54 Cal.3d at p. 447 [defects in verdict form excused if defendant's substantial rights not prejudiced]; *People v. Chevalier*, *supra*, 60 Cal.App.4th at p. 514 [properly instructed jury made one of sentencing enhancement's required factual findings even though finding not expressly included on verdict form].) Since Delavega's claim of error does not involve the omission of subdivisions (b) and (c) from the verdict form, these decisions do not assist him.

We recognize that there are compelling policy arguments in favor of increasing courts' sentencing discretion under section 12022.53, and we assume the Legislature is aware of them.  But without express statutory authorization, courts lack the power to strike a greater enhancement found true by the jury and supported by the law and evidence and impose a lesser enhancement that the jury did not find true.  When the verdict forms omit charged lesser enhancements, as they did here, a sentencing court is left under current law with the all-or-nothing choice of imposing or striking the greater enhancement.

### III.
#### DISPOSITION

The judgment is affirmed.

_____

Humes, P.J.

WE CONCUR:

_____

Banke, J.

_____

Sanchez, J.

*People v. Delavega*  A154936

26

Trial Court:

Superior Court of the County of Contra Costa

Trial Judge:

Hon. Anita L. Santos

Counsel for Defendant and Appellant:

Law Offices of Beles & Beles, Robert J. Beles, Paul McCarthy, Manisha Daryani

Counsel for Plaintiff and Respondent:

Xavier Becerra, Attorney General

Lance E. Winters, Chief Assistant Attorney General

Jeffrey M. Laurence, Senior Assistant Attorney General

Donna M. Provenzano, Supervising Deputy Attorney General

David H. Rose, Deputy Attorney General

*People v. Delavega*  A154936